# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JAMES G. FORRET,<br><br>       Plaintiff,<br>v.<br><br>JAMES L. DAVIS,<br><br>       Defendant. | Case No. 17-CV-1440-JPS<br><br><br>**ORDER** |

**1. INTRODUCTION**

This action was originally filed in Waukesha County Circuit Court, and was removed to this Court on October 20, 2017. (Docket #1). According to his Complaint, Plaintiff loaned money to Defendant's start-up business, with Defendant personally guaranteeing the investment. When Plaintiff called in the loan, Defendant refused to pay, leading to Plaintiff filing this breach of contract action. Defendant maintains that this Court lacks personal jurisdiction over him, as he is a Minnesota resident. Defendant filed a motion to dismiss on that ground on October 27, 2017. (Docket #4). That motion is now fully briefed. (Response, Docket #11; Reply, Docket #14). For the reasons explained below, the motion must be granted.

**2. LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(2), a party may move to dismiss on the ground that the court lacks jurisdiction over him. Fed. R. Civ. P. 12(b)(2). The plaintiff bears the burden of establishing personal jurisdiction when the defendant contests it. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). However, in cases such as this one, where the matter is decided on a motion to dismiss and without an evidentiary

hearing, the plaintiff "'need only make out a *prima facie* case of personal jurisdiction.'" *Id.* (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)).

Unlike some other challenges to a plaintiff's complaint, when questions of personal jurisdiction arise, the Court may consider affidavits and other evidence outside the pleadings. *Purdue Research Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Indeed, it can "accept as true any facts contained in the defendant's affidavits that remain unrefuted by the plaintiff." *GCIU–Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009). Nevertheless, the court will "accept as true all well-pleaded facts alleged in the complaint and resolve any factual disputes in the affidavits in favor of the plaintiff." *Purdue*, 338 F.3d at 782; *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012).

**3.     RELEVANT FACTS**

The operative facts, drawn from Plaintiff's Complaint, the exhibits thereto, and the parties' affidavits, are as follows.[1] Plaintiff is a citizen of Wisconsin, while Defendant is a citizen of Minnesota. Both parties are successful businessmen, each with substantial personal net worth, who attained their wealth in the manufacture and distribution of lighting fixtures. The parties have known each other for forty years through their work in this field. As part of this relationship, Defendant knew that Plaintiff lived and worked in Wisconsin. Defendant does not live, work, or own

---

[1]Defendant criticizes Plaintiff's affidavit testimony as self-serving and unsupported by other evidence. The Seventh Circuit has dispensed with the notion that such testimony must be discounted. *Sanders v. Melvin*, 873 F.3d 957, 960 (7th Cir. 2017). In any event, Defendant's argument is misplaced in a motion to dismiss for lack of personal jurisdiction, wherein the Court must accept all of Plaintiff's allegations as true and construe them in Plaintiff's favor.

property in Wisconsin. He does not have a business office or advertise any services here.

At some point, Defendant created a company called Cachet Financial Solutions, Inc. ("Cachet"). Defendant is on the board of Cachet and, owning 22% of its common stock, is its single largest shareholder. Cachet is a Minnesota company with its principal place of business in Chanhassen, Minnesota (a suburb of Minneapolis). While he is a board member for Cachet, he does not actually perform any services for the company.

In 2012, Cachet was in need of $3 million in debt financing. At that time, during conversations relating to the lighting business, Defendant casually mentioned to Plaintiff the possibility of investing in Cachet. Defendant solicited a $100,000 investment from Plaintiff during those conversations. Plaintiff was reluctant to invest because it seemed like a risky venture and he was nearing retirement. Defendant ultimately convinced Plaintiff by offering him a personal, written guarantee that he would repay the loan if Cachet could not (the "Guarantee"). The Guarantee provided that if Cachet could not repay the loan by January 15, 2015, Defendant would do so. Defendant executed the Guarantee in Minnesota. Upon receipt of the written Guarantee, Plaintiff made the $100,000 payment to Cachet from his home in Wisconsin.[2]

---

[2]According to Defendant, a stock broker named Bernie Weber ("Weber") formally solicited Plaintiff's investment in Cachet. Defendant supports this assertion by noting that Cachet's own stock broker, Terry Nerhus ("Nerhus"), received a finder's fee for facilitating Plaintiff's investment via Weber. If Defendant himself had obtained Plaintiff's investment, Cachet would have had no reason to pay that fee to Nerhus.

Plaintiff admits that he knows Weber and that he may have spoken to Weber about Cachet. He does not recall any specific communications with Weber about Cachet, and he does not possess any correspondence confirming those

In late 2013, Cachet asked Plaintiff to convert his loan into Cachet stock. Plaintiff was reluctant to convert his loan into stock, but Defendant persuaded him by offering to amend the Guarantee (the "Amendment"). According to the Amendment, Plaintiff agreed to convert his loan into Cachet stock. The conversion contemplated by the Amendment occurred while Plaintiff was located in Wisconsin. If Plaintiff's stock was worth less than $100,000 as of March 15, 2015, Defendant would nevertheless be obligated to pay that amount to Plaintiff to buy his shares. Like the Guarantee, the Amendment was signed in Minnesota. When the time came, Plaintiff's stock was only worth about $21,000. Plaintiff demanded the full $100,000 price from Cachet, but it would not redeem his shares. Plaintiff then turned to Defendant and his Guarantee, but he too refused to pay.[3]

Plaintiff and Defendant exchanged an unspecified number of e-mails relating to the Cachet investment. From 2013 to the filing of this lawsuit, Plaintiff has had communications with Defendant about Cachet and recoupment of Plaintiff's investment. In 2017, Defendant attempted to arrange repayment through Cachet but Plaintiff never received the money.

---

communications. Plaintiff is adamant, however, that it was Defendant and not Weber who solicited the investment. In accordance with the standard of review, the Court must credit Plaintiff's account.

[3]Defendant maintains that the Amendment did not allow Plaintiff to redeem his shares for $100,000 at any point in the future. Rather, the transaction needed to occur on March 15, 2015. However, when that date arrived, Plaintiff decided to keep his stock. Approximately two years later, in March 2017, Plaintiff contacted Defendant in an attempt to enforce the Guarantee and Amendment. Defendant refused because the Guarantee had expired. Defendant nevertheless suggested that Cachet could pay Plaintiff what he wanted if Plaintiff would tender his shares to the company. Plaintiff would not agree to do so until months later. These facts are inconsistent with the Complaint and Plaintiff's affidavit, and thus cannot be credited in the context of the instant motion.

Plaintiff asserts one claim against Defendant—breach of contract. Plaintiff alleges that he performed his obligations under both the Guarantee and the Amendment, by making the initial loan, and by converting his loan into Cachet stock. Defendant, however, failed to abide by those agreements when he would not repay the loan to Plaintiff after March 15, 2015.

**4.     ANALYSIS**

Personal jurisdiction refers to a court's power over parties, in contrast to its subject-matter jurisdiction, which is its power over certain types of claims. When, as here, the Court exercises diversity jurisdiction over a case, the Court will exercise personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would do so. *Purdue*, 338 F.3d at 779. This normally entails a two-part analysis, where the court first asks whether the state's long-arm statute encompasses the defendant's conduct, then considers whether exercising personal jurisdiction in the case at hand would comport with principles of due process. *Id.* Defendant makes no mention of Wisconsin's long-arm statute in his opening brief. Plaintiff asserts that his claim falls within the contracts provision of the statute. Wis. Stat. § 801.05(5)(a). Without opposition from Defendant, the Court must agree.[4]

Notwithstanding compliance with the state long-arm statute, the Due Process Clause of the Fourteenth Amendment protects a defendant from being haled into court in a state where it has no meaningful connections. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985). Due

---

[4]Plaintiff pointed out this failing in his response brief. (Docket #11 at 5 n.1). In an attempt to salvage the position, Defendant offered an analysis of the long-arm statute in his reply. Arguments available to the movant—as this was—and raised for the first time in a reply brief are deemed waived. *West v. MeadWestvaco Corp.*, 81 F. App'x 74, 75 (7th Cir. 2003).

process requires that for personal jurisdiction to exist over a nonconsenting, out-of-state defendant, the defendant must have "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

There are two types of personal jurisdiction—general and specific—that can satisfy the strictures of due process. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414–16 (1984). General personal jurisdiction requires that the defendant have "'affiliations with the State [that] are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). If such contacts exist, "the court may exercise personal jurisdiction over the defendant even in cases that do not arise out of and are not related to the defendant's forum contacts." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). Plaintiff does not assert the existence of general personal jurisdiction over Defendant. (Docket #11 at 4-9).

Specific personal jurisdiction, by contrast, exists where the suit before the Court arises from or relates to the defendant's contacts with the forum State. *Helicopteros*, 466 U.S. at 414; *Int'l Shoe*, 326 U.S. at 317–18. This type of personal jurisdiction is more limited than general personal jurisdiction, which, if established, means that the defendant can be sued on any claim in the forum State. *See Daimler*, 134 S Ct. at 754. Specific personal jurisdiction arises only where the defendant's contacts with the forum state "directly relate to the challenged conduct or transaction." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010). In assessing the existence of

specific personal jurisdiction, the Court must examine the "relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).

Inexplicably, neither Plaintiff nor Defendant cite to *Walden v. Fiore*, 134 S. Ct. 1115 (2014), the latest decision of the U.S. Supreme Court on specific personal jurisdiction, or its progeny. Those decisions provide the most recent and controlling guidance on assessing the question of "minimum contacts." *Walden* holds that specific personal jurisdiction is present only when "the defendant's suit-related conduct [creates] a *substantial* connection with the forum State." *Id.* at 1121 (emphasis added).

*Walden* offers two important observations on how to evaluate whether such a connection has been made. First, the defendant himself must make the contacts with the forum State. *Id.* at 1122. It is improper to "attempt[] to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id.* Second, courts must look to "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* Critically, *Walden* holds that "the plaintiff cannot be the only link between the defendant and the forum." *Id.* While "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff[,] . . . a defendant's relationship with a plaintiff . . ., standing alone, is an insufficient basis for jurisdiction." *Id.* at 1123. In other words, "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* (quoting *Burger King*, 471 U.S. at 475).

As an example, *Walden* points to *Burger King*, where the defendant "'reach[ed] out beyond' their State and into another by . . . entering a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum State[.]" *Id.* at 1122 (quoting *Burger King*, 471 U.S. at 479-80). Post-*Walden*, the Seventh Circuit echoed the Supreme Court's sentiments. Just three months after *Walden* was decided, the Court of Appeals held that "after *Walden* there can be no doubt that the plaintiff cannot be the only link between the defendant and the forum." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014) (quotation omitted). Similarly, *Johnson*, which came down earlier this year, notes that "a contract with a forum-state party does not automatically establish personal jurisdiction in the forum." *Johnson v. Hartwell*, 690 F. App'x 412, 413 (7th Cir. 2017). *Johnson* reminds courts to "examine 'prior negotiations, contemplated future consequences, the terms of the contract, and the parties' course of actual dealing with each other' to determine if the defendant has 'purposefully availed' itself of conducting business in the forum." *Id.* (quoting *Purdue*, 338 F.3d at 781); *see also Burger King*, 471 U.S. at 479.[5]

*Johnson* supplies a helpful analogy to this case. Johnson, an Indiana resident, sued P&J Apartments, LLC, the apartment manager Paul Boehms,

---

[5]Both parties rely on three specific personal jurisdiction requirements announced by the Seventh Circuit prior to *Walden*. *Felland*, 682 F.3d at 673 ("(1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state . . . ; (2) the alleged injury must have arisen from the defendant's forum-related activities . . .; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice[.]") (citations omitted). This motion may be disposed of on the general "minimum contacts" principles stated in *Walden* and *Johnson*. It is thus unnecessary to engage in a detailed analysis of each requirement.

and their lawyer, Brian Hartwell, all citizens of Michigan. *Johnson*, 690 F. App'x at 412. Johnson had co-signed a lease with her son, who failed to pay the rent. *Id.* The defendants used various means to collect the overdue amounts from her, including sending collection notices to Johnson at her home and to various e-mail addresses. *Id.* Johnson sued them in Indiana federal court for various torts, including negligence, intentional infliction of emotion distress, and "privacy violations." *Id.* Analyzing her tort claims in light of *Walden*, *Johnson* concluded that the defendants' only connection to Indiana was through the plaintiff, and thus personal jurisdiction was not present. *Id.* at 413.

Johnson presented an alternative argument in an attempt to save her bid for personal jurisdiction. She suggested that a better basis for jurisdiction was in contract, not tort, given that the defendants had agreed to her co-signature and corresponded with her knowing she was in Indiana. *Id.* The court was unmoved:

> Johnson's contract with Boehms and P&J contemplated the lease of a home in Michigan, and payment was to be made to P&J, a company also based in Michigan. It is true that Johnson received correspondence from the defendants and paid rent to P&J while she happened to be in Indiana. But her location there was incidental to the contract. Nothing about Indiana bore on the transaction for purposes of personal jurisdiction. . . . The contract here established only a random or fortuitous connection with Indiana that was not sufficient to establish personal jurisdiction there.

*Id.* at 413-14 (citations and quotations omitted).

Applying these considerations to the facts of this case, the Court finds that Defendant lacks the requisite minimum contacts with Wisconsin to support an exercise of personal jurisdiction over him. The relevant

contacts are extremely limited, and those initiated by Defendant himself were a few telephone calls and e-mails with Plaintiff regarding the Guarantee and the Amendment.[6] Even if Defendant knew that Plaintiff was a Wisconsin resident, his contacts were with Plaintiff alone and had nothing to do with the State itself. In other words, Defendant's only link to the forum State is through Plaintiff. Plaintiff's presence in Wisconsin during the contacts was nothing more than fortuitous. If Plaintiff had been a resident of Florida, Hawaii, or any state in between, those jurisdictions would have precisely the same connection to this action as does Wisconsin.

This analysis is buttressed by reference to the nature of this action—breach of contract. Though Defendant agreed to the Guarantee and the Amendment with a Wisconsin party, as in *Johnson*, nothing about Wisconsin bore on the contracts; they make no mention of Wisconsin at all and express no reliance on Wisconsin law. Rather, the contracts were executed in Minnesota, and they reflect an agreement by a Minnesota resident to guarantee an investment in a Minnesota company. Further, the subsequent course of dealing was minimal, consisting of a few telephone calls and e-mails, and the terms of the contracts were exceedingly simple, with the only performance required being a single payment if certain conditions were met. These are not the "continuing and wide-reaching contacts" Wisconsin contacts that *Walden* and *Burger King* say are necessary for the exercise of personal jurisdiction. *Walden*, 134 S.Ct. 1122 (quoting *Burger King*, 471 U.S. at 479-80). The contracts did not, then, create a substantial connection between Defendant and Wisconsin. On the facts of

---

[6]While these contacts are themselves critical to the case, *Walden* is concerned with whether there are substantial contacts with the forum State, not the centrality of the contacts to the cause of action. *Walden*, 134 S.Ct. at 1122-23.

this case, Defendant did not purposefully avail himself of the privilege of conducting business in Wisconsin such that he should have foreseen being haled into court here.

5.  **CONCLUSION**

In light of the foregoing, the Court finds that the exercise of personal jurisdiction over Defendant in this matter would not comport with the Due Process Clause. Defendant's motion to dismiss must, therefore, be granted, and this action dismissed without prejudice.

Accordingly,

**IT IS ORDERED** that Defendant's motion to dismiss (Docket #4) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED without prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 19th day of December, 2017.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge